BANK OF ILLINOIS, (LAFAYETTE BANK v.) See Case No. 7,987.

BANK OF ILLINOIS, (STICKNEY v.) See Case No. 13,440.

———

## Case No. 889.

### BANK OF KENTUCKY v. ADAMS EX. CO.

[1 Flip. 242;[1] 14 Amer. Law Reg. (N. S.) 30; 1 Amer. Law T. Rep. (N. S.) 451; 3 Amer. Law Rec. 148; 1 Cent. Law J. 436.]

Circuit Court, D. Kentucky. Sept. 3, 1872.[2]

LIABILITY OF AN EXPRESS COMPANY FOR MONEY ENTRUSTED TO IT FOR TRANSPORTATION — COMMON CARRIERS, OR ORDINARY BAILEES, FOR HIRE.

1. A common carrier who has not limited his responsibility, is undoubtedly responsible for losses, whether occurring on vehicles controlled by himself exclusively, or belonging to and controlled by others, because he is an insurer for the safe delivery of the article which he has agreed to carry. But when he has limited his liability so as to make himself responsible for ordinary care only; and the shipper, to recover against him, is obliged to aver and prove negligence, it must be his (the carrier's) negligence, or the negligence of his agents, and not the negligence of persons over whom he has no control.

[See note at end of case.]

2. If in his employment he uses the vehicles of others, over which he has no control, and uses reasonable care—that is, such care as ordinarily prudent persons engaged in like business use in selecting the vehicles; and if the loss arises from a cause against which he has stipulated with the shipper, he shall not be liable for the same, unless it arises from his want of care, or the want of care of his employees.

[See note at end of case.]

———

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

[2] [Reversed in 93 U. S. 174.]

3. A common carrier is bound to carry all articles within the line of his business upon the terms and conditions imposed by law, if the shipper shall so demand. He has a right, however, to charge in proportion to the risk assumed by him. But when he has undertaken to carry at a less rate than he would have a right to charge, and would charge, if he undertook to carry only upon the conditions imposed by law, and has by his receipt, delivered to the shipper, stipulated for a reasonable limitation of his responsibility, and the shipper has accepted the receipt without objection, the latter is as much bound by the contract thus made as any other party would be.

[At law. Action by the Bank of Kentucky against the Adams Express Company to recover damages for a package which was destroyed by fire while in possession of the defendant. Verdict and judgment for defendant. Heard on motion for a new trial. Overruled.]

J. M. Harlan and Barr, Goodloe & Humphrey, for plaintiff.

I. & J. Caldwell and G. C. Wharton for defendant.

BALLARD, District Judge. On a former day there was in this case a verdict and judgment for the defendant. At the trial the counsel for the plaintiff took several exceptions to the rulings of the court and charge to the jury, and they have now moved for a new trial, assigning for cause that the court erred in refusing to give the instructions asked by them, and in giving the instructions which were given.

The learned counsel have submitted no argument on their motion. They stand on the argument made and the authorities cited at the trial.

As both that argument and these authorities received at the time the fullest consideration, I think I would be justified in overruling the motion, without adding to what was then said; but, as the opinion expressed by me on the main point in the case is apparently opposed to several respectable authorities, and is supposed to present a new and important question, I feel that I ought not to allow this opportunity to pass without attempting a vindication of an opinion, the correctneess of which has been confirmed by subsequent reflection.

The facts in the case are substantially as follows: The Southern Express Company and the Adams Express Company are engaged each in the business of carrying money and other articles from one part of the country to another for hire, at the request of any one who offers such articles to them for carriage. They do not use in their business any vehicles of their own, except such as are required to transport the articles intrusted to them to and from railroad depots, and to and from steamboat landings. They use railroads, steamboats, and other public conveyances of the country. These conveyances are not subject to their control, but are governed entirely by the companies and persons to whom they belong. The packages intrusted to them are at all times, while on these public conveyances, in the care of one of their own messengers or agents. These companies are engaged in carrying by the railroads through Louisiana and Mississippi to Humboldt, Tennessee, and thence over the Louisville and Nashville Railroad to Louisville, Kentucky, under a contract by which they divide the compensation in proportion to the distance the article is transported by the respective companies. Between Humboldt, Tennessee, and Louisville, Kentucky, both companies employ the same messenger, but this messenger, south of the northern boundary of the state of Tennessee, is subject entirely to the orders of the Southern Express Company, and north of that boundary, is subject entirely to the orders of the Adams Express Company.

These express companies are in the habit of charging one price when they undertake to insure the safe delivery of the articles intrusted to them—that is, when they do not modify their ordinary responsibility as common carriers, and of charging another and lower price when their responsibility is limited. The Louisiana National Bank was aware of these regulations, and had in its possession printed blank receipts, or bills of lading, showing in the body the conditions and exceptions upon which the companies would undertake to carry at the lowest rate, and in the margin of the printed blank for the rate at which they would insure. Having received a letter from the plaintiff, directing the forwarding by express of the sum of $13,528.15, the bank, by its teller, filled the blanks in that part of the bill of lading which contained the conditions and exceptions, and presented it to the Southern Express Company for its signature, and delivered the package of money addressed to the plaintiff without stating who was the owner. The bill of lading was signed and re-delivered to the teller of the Louisiana National Bank, and forwarded by him to the plaintiff at Louisville. It does not appear that the receipt was read at the time of its delivery, or that the attention of the officers of the Louisiana National Bank was called specially to the exceptions contained in it, but, as before stated, the bank was aware of these exceptions, and of the stipulations for the lesser rate of compensation.

This package was carried by the Southern Express Company from New Orleans to Humboldt, Tennessee, and there delivered to the joint messenger of the Southern and Adams Express Companies. While it was in the custody of this messenger between Humboldt and the northern line of the state of Tennessee, the car in which the package was contained was precipitated through a trestle-work on the line of the Louisville and Nashville Railroad, at or near Budd's creek, and the car and package were destroyed by fire. This was caused by the fallen locomotive, without any fault or neglect on the part

of the messenger who had charge of the package.

So much of the receipt as is material to the present controversy is as follows:

"Southern Express Company, Express Forwarders. No. 2.—$13,528.15. July 26, 1869. Received from the Louisiana National Bank one package, sealed, and said to contain $13,528.15, addressed 'Bank of Kentucky, Louisville, Kentucky.' Upon the special acceptance and agreement that this company is to forward the same to its agent nearest or most convenient to destination only, and there deliver the same to other parties to complete the transaction, such delivery to terminate all liability of this company for such damage; and also, that this company are not to be liable in any manner, or to any extent, for any loss or damage * * * of such package, or of its contents * * * occasioned * * * by fire or steam. The shipper and owner hereby severally agree that all the stipulations and conditions in this receipt contained shall extend to and inure to the benefit of each and every company or person to whom the Southern Express Company may intrust or deliver the above described property for transportation, and shall define and limit the liability therefor of such other company or person."

Upon these facts the court charged the jury:

1st—That the Southern Express Company and the Adams Express Company are common carriers.

2d—That the Adams Express Company is liable for the loss of packages delivered to the joint messenger of the two companies at Humboldt, Tennessee, although the loss occur south of the northern [3] boundary of the state of Tennessee.

3d—That if the jury believe the facts above detailed in relation to the execution of the receipt, then it, thus signed and delivered, constitutes the contract, and all exceptions in it are a part of the contract, no matter whether each or all of them were known to the Louisiana National Bank or not; and the plaintiff is bound by this contract, whether it expressly authorized the Louisiana National Bank to make it or not.

4th—If the bill of lading contained no exception, it is clear that the defendant would not be excused because the accident occurred without its fault. It would be the insurer, and therefore accountable. But the bill of lading among other exceptions contained this: "That the company are not liable in any manner, or to any extent, for any loss or damage * * * of such package or its contents * * * occasioned * * * by fire."

Now, if you believe that the package was destroyed by fire, as above indicated, without any fault or neglect on behalf of the messenger, or the defendant, the defendant has brought itself within the terms of the exception, and it is not liable. It is not material to inquire whether the accident resulted from the want of care, or from the negligence of the Louisville and Nashville Railroad and its agents or not, since the uncontroverted testimony shows that the car and train in which the messenger of the Adams Express Company was transporting the package belonged to the Louisville and Nashville Railroad Company, and were exclusively subject to its control and orders. A common carrier who has not limited his responsibility, is undoubtedly responsible for losses, whether occurring on vehicles controlled by himself exclusively, or belonging to or controlled by others, because he is an insurer, for the safe delivery of the article which he has agreed to carry; but, when he has limited his liability so as to make himself responsible for ordinary care only; and the shipper, to recover against him, is obliged to aver and prove negligence, it must be his negligence or the negligence of his agents, and not the negligence of persons over whom he has no control.

If in his employment he use the vehicles of others over which he has no control, and use reasonable care—that is, such care as ordinarily prudent persons engaged in like business use in selecting the vehicles, and if the loss arises from a cause against which he has stipulated with the shipper—he shall not be liable for the same unless it arises from his want of care, or the want of care of his employees. "Without, therefore, deciding whether or not the evidence adduced in the case tends to establish any want of reasonable or ordinary care on the part of the Louisville and Nashville Railroad Company, I instruct you that such evidence is irrelevant and incompetent, and that you should disregard it —that is, give no more effect to it than if it had not been adduced."

The first and second instructions were not excepted to, but the third and fourth were. At the trial, the plaintiff insisted that it was not bound by the terms of the receipt, because it was not shown that the attention of the Louisiana National Bank was called to them at the time, or that it expressly assented to them, but I am of opinion that there was no error in this portion of the charge. The Louisiana National Bank was aware that the receipt contained some exceptions and conditions. It accepted the receipt without remonstrance or objection, and both authority and reason demonstrate that the receipt must under these circumstances be regarded as constituting the contract of the parties: Dorr v. New Jersey Steam Nav. Co., 1 Kern. [11 N. Y.] 485; Wells v. Steam Nav. Co., 4 Seld. [8 N. Y.] 375, and 2 Comst. [2 N. Y.] 204; Grace v. Adams, 100 Mass. 505; Holford v. Adams, 2 Duer, 480; York Co. v. Central Railroad, 3 Wall. [70 U. S.] 107.

It is now everywhere admitted that a common carrier may limit his responsibility by express contract, and if he may make an express contract with a shipper of goods, I can

---

[3] [14 Amer. Law Reg. 32, gives "southern."]

not see why the contract may not be shown by the same evidence which would establish a contract between other parties. I can not see why a writing delivered by a common carrier to an owner of goods intended by the former to express the terms and conditions of his contract to carry, and received by the latter as such, should not constitute the contract between them.

A common carrier, it is true, is bound to carry all articles within the line of his business upon the terms and conditions imposed by law, if the shipper shall so demand. He has, however, a right to charge in proportion to the risk assumed by him. It is upon this ground the authorities hold, that unless his responsibility is modified by express contract, his undertaking to carry is upon the terms and conditions which are imposed by law. But when he has undertaken to carry at a less rate than he would have a right to charge, and would charge, if he undertook to carry only upon the conditions imposed by law, and has, by his receipt, delivered to the shipper, stipulated for a reasonable limitation of his responsibility, and the shipper has accepted the receipt without objection, the latter is as much bound by the contract thus made as any other party would be.

The correctness of the propositions contained in the remaining portion of the charge to which exception was taken may, I think, be demonstrated in two ways:

1st—By the contract between the bank and the express company, it was agreed that the company should not be responsible for any loss or damage of the package which should be occasioned by fire. The loss of the package was occasioned by fire; hence the carrier, by the terms of the contract, is not responsible. It is not pretended that the contract was violated by using the cars of the Louisville & Nashville Railroad Company to transport the messenger and the package, or was violated in any other respect. It follows, therefore, that if the company is liable at all, it is not so by virtue of the contract, but in spite of it.

The contract, however, does not attempt to exempt, nor could it have exempted, the express company from loss occasioned by the neglect of itself or its servants; but when it is sought to charge the company with neglect, it must be such neglect as it is responsible for upon the general principles of law.

Now, upon these principles, no one is responsible for damage occasioned by neglect unless it be the neglect of himself or his servants, or agents. But the facts stated show that neither the company nor its servant was guilty of any neglect. It follows that the defendant cannot be charged on this account. Though the defendant used the Louisville & Nashville Railroad to transport its messenger and the package, the railroad company was not, in any legal sense, the servant of the defendant. The defendant had no control over the railroad company, or over its servants. The railroad company was no more the servant of the defendant than it is of any passenger whom it transports. It was no more the servant of the defendant than is the hack or cab the servant of him who hires it to transport him from one part of the city to another.

2d—All the authorities agree that when a common carrier has, by special contract, limited his responsibility, "he becomes, with reference to that particular transaction, an ordinary bailee—a private carrier for hire," or, "reduces his responsibilities to those of an ordinary bailee for hire." York Co. v. Illinois Cent. R. Co., 3 Wall. [70 U. S.] 107; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 382; New York Cent. R. Co. v. Lockwood, 17 Wall. [84 U. S.] 357.

I prefer the latter form of stating the proposition, because it is less misleading. I do not think that a common carrier by entering into a contract limiting his responsibility, changes his character. He still remains a common carrier, with his responsibility limited in respect to the matter embraced in his contract, to that of an ordinary bailee for hire. The authorities are equally clear that an ordinary bailee for hire is bound to only ordinary diligence, and responsible only for losses and injuries occasioned by negligence or want of ordinary care. The defendant did by special contract limit its responsibility, and neither it, nor its servant, the messenger, is chargeable with any neglect or want of care. The loss of the package was occasioned by fire. The contract provides that the defendant should not be liable for a loss so occasioned, and as neither [the defendant nor][4] the defendant's servant was wanting in care, it follows that it is not responsible for the loss.

Suppose the package had been lawfully intrusted by the Louisiana National Bank to a private person to be carried for hire, and delivered to the plaintiff, and it was contemplated by the parties that such person would transport the package and himself by the railroads, which, it was contemplated, the defendant would use, and the package had been lost under the same circumstances that the package delivered to the defendant was lost, would it, for a moment be contended that such private person would be responsible?

Suppose again, that a person should deliver to his friend, who contemplated coming from New Orleans to Louisville by the ordinary modes of travel, a watch, to be carried and delivered at the latter city, and that while such private carrier, without reward, was proceeding on his way in one of the cars of the Louisville & Nashville Railroad Company, the car should by the gross carelessness of those having charge of it, be thrown from the track, and the watch in charge

---

[4] [From 14 Amer. Law Reg. 34, and 1 Amer. Law T. Rep. 455.]

of the carrier, without any neglect on his part, be destroyed. Is it conceivable that such carrier would be responsible for the loss? To hold that he would be responsible would not only violate the plainest principles of law, but would shock the common sense of mankind, and yet, not only the private carrier for hire, but the private carrier without reward is responsible for the loss of a package intrusted to him, under the circumstances supposed, if the defendant is responsible for the loss of the package claimed in this case.

The private carrier for hire is responsible for losses and injuries occasioned by want of ordinary care on his part, or on the part of his servants; and a private carrier without pay is responsible, if not for want of ordinary care, certainly for gross neglect. It cannot be maintained with the least show of reason that the Louisville & Nashville Railroad was any more the servant of the defendant in transporting the package sued for in this case than it was the servant of the carrier for hire, and the carrier without hire in the cases supposed, and if these last are not responsible for the neglect of the servants of the railroad company, it is impossible to conceive that the defendant is responsible for such neglect.

The counsel for the plaintiff attempt to escape this conclusion by insisting that, though the defendant limited its responsibility, it still remains a common carrier, and that such carrier is responsible not only for any want of negligence of himself and his servants, but for the negligence of any agency which he may employ in his business.

This proposition is misleading. It is not strictly correct to say that a common carrier is responsible for the negligence of any agency in his business, or even for his own negligence or that of his servants, in the sense in which his responsibility is distinguished from the responsibility of another person. A common carrier is bound to deliver goods intrusted to him, unless prevented by the owner, the act of God, or the public enemy. He is, as the law terms him, an insurer for the safe carriage and delivery of goods, subject only to the exceptions above mentioned. If he does not deliver goods intrusted to him, he is responsible, not because the goods were lost by his neglect, or the neglect of a servant, or by the neglect of some agency which he employed, but because he insured their delivery. His responsibility is wholly independent of the neglect of any one. If goods delivered to him to be carried are lost while in his or his servant's custody, or while in the custody of some other person who is not his servant, he is equally responsible, not because he is liable upon any principle of law for the negligence of any person who is not his servant, but because he is bound by law to carry and deliver safe all goods delivered to him unless prevented, as before stated, by the owner, the act of God, or the public

enemy. If he has limited his responsibility by special contract, and the loss has been occasioned by the cause excepted in the contract, then the owner in order to charge him must show that, though the loss arose directly from the cause excepted, that cause itself was occasioned by the neglect of the carrier. But, when a public or private carrier is sought to be charged with a loss occasioned by his neglect, when neglect is the foundation of the plaintiff's claim, I am not aware that he is liable for any negligence except upon the same principles and under the same circumstances that any other person is liable. I am not aware that he, more than any one else, can be made responsible for the negligence of persons who are not his servants.

Undoubtedly the defendant did, notwithstanding its contract, continue to be a common carrier, but its responsibility was limited to that of an ordinary bailee for hire. Now, an ordinary bailee for hire is responsible for only ordinary care, and liable for the neglect of himself or his own servants, and not for the neglect of persons over whom he has no control. Consequently, he is not responsible for a loss occurring under the circumstances presented in this case. If it be admitted that the common carrier has by his contract limited his responsibility to that of an ordinary bailee for hire, then it cannot be consistently insisted upon that he shall be held liable as a common carrier who has made no express contract. To admit the contract, and to deny any effect to it, is too much for one proposition. The proposition of counsel, reduced to its essence, is simply this: that, though the defendant has, by special contract, limited its responsibility to that of a private bailee for hire, it is still responsible as a common carrier. A proposition involving so obvious a contradiction cannot require further exposure.

But obvious as the fallacy and error contained in the counsels' proposition appear to me, the proposition itself seems to be supported by the decision of the supreme court of California, in the case of Hooper v. Wells, Fargo & Co., 27 Cal. 11; by the supreme court of Minnesota, in the case of Christenson v. American Exp. Co., 15 Minn. 270, (Gil. 208;) and by the learned editor of the American Law Register, in his note to the former case, Amer. Law Reg. Nov., 1865, p. 30.

In the first case, the carrier made a contract stipulating that he would not be responsible except as forwarder. The court construed the contract as limiting the responsibility of the carrier to that of forwarder —that is, of an ordinary bailee for hire—but they held the carrier responsible for a loss occurring on a tug or lighter which plied between the shore and an ocean steamer, occasioned by the negligence of the managers of the tug, although they were not subject to the control or orders of the express company.

In respect to the responsibility of forwarders, the court say: "They are not insurers like carriers, but they are liable for losses of goods while in their custody, resulting from negligence of themselves and those they employ in their business of forwarders."

The correctness of the first part of this proposition cannot be disputed, nor do I question the correctness of the latter part, if by "those whom they employ in their business of forwarding," the court mean those who are the forwarders' servants, and subject to their control and orders. The court further say, the responsibility of a forwarder is the same as that of a warehouseman, and "if a warehouseman, instead of using his own warehouse and employing his own subordinates, should, for a stipulated sum paid to the owner, use in his business the warehouse of another person who employs and controls the subordinates, there can be no doubt that he would be liable for a loss of the goods intrusted to his care, occurring while in his possession, and resulting from the negligence of such subordinates, although not under his control."

If, by the words "intrusted to his care," the court mean to suggest a case where the warehouseman has a contract to keep the goods in his own warehouse, I entirely concur in the proposition stated. But if they mean that a warehouseman who violates no contract by removing the goods of his customer from his own warehouse into that of another prudent warehouseman is responsible for a loss of the goods resulting from the negligence of the subordinates of such other warehouseman, I cannot assent to it.

Suppose a warehouseman's warehouse should be destroyed by fire, it would be his duty to remove such of the goods of his customers as were saved, to the warehouse of some other prudent person, and it cannot be insisted that he would be responsible for the loss of goods occurring there, resulting from the negligence of servants of the latter warehouseman.

If a warehouseman contract to keep goods in his own warehouse, and he should remove them—in violation of his contract—to another warehouse, I suppose he would be liable for all losses there occurring, just as a bailee who hires a horse to go to a particular place is responsible for loss or injury to the horse, should he ride or drive him to a different place, and the horse be lost or injured in the prosecution of such other journey.

Again, the court say: "The fact that the defendants made use of various, public conveyances, their messenger with the treasure traveling a part of the way by stage, a part by steam tug and lighters, and a part by ocean steamers, makes no difference as to their liability. For defendants' purposes, the managers of these various conveyances were their agents and employees."

If, as seems to be conceded, it was contemplated by both the plaintiff and defendants that the defendants would not use in their business their own vehicles, but the conveyances of others, not at all subject to their control or management, and that in the use of those other conveyances the defendants did not violate their contract, I can not admit that the defendants, who, by the admissions of the court, were liable only as ordinary bailees for hire, were responsible for losses occasioned by the negligence of the managers of those conveyances. I cannot admit that the managers of those other conveyances were, in any legal sense, their agents and employees. The relation of master and servant, principal and agent, does not and cannot exist where the master has no control over the servant, and the principal no control over the agent.

The court further say: "The defendants had the means of holding the proprietors of those various vehicles used in their business of expressmen responsible to them, had they chosen to do so. If they did not take the proper means to secure themselves, it was their own fault."

But I cannot see how any argument can be drawn from this to show that the defendants were responsible. Every bailee or depositary may hold any one responsible for destroying or injuring goods in his possession, but it cannot be maintained that he is responsible for such destruction or injury unless he, by his negligence, contribute to the same. Besides, the plaintiff had his remedy against the proprietors of those other conveyances, which occasioned the loss—see the New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 382—and it might be retorted "that if he did not take the proper means to secure himself, it was his own fault."

In the Minnesota case, it was stipulated, that the carrier "was not to be held liable for any loss or damage, except as forwarder only, or for any loss occasioned by the perils of navigation and transportation." The goods were received at New York, and were to be delivered to Christenson & Brother, Mankato, Minnesota. When the goods reached St. Paul, they were placed by the carrier on board the steamboat "Julia," a boat belonging to the Northwestern Union Pacific Company, and managed entirely by its officers and servants, to be transported to Mankato. The goods remained in charge of the carrier's messenger. The boat at the time of the accident was strong, and in good condition. The carrier was guilty of no want of care in selecting the Julia to transport the goods, but, on the way, the Julia was, through the carelessness of its officers and managers, run against a snag and sunk, whereby the goods were damaged.

The court say, that the carrier is not exempt from the loss by reason of the stipulation in the bill of lading that "it was not to be held liable for any loss or damage except as forwarder," because, they say: "In our

opinion　\*　\*　\*　the effect claimed for this clause of the receipt by the defendants is inconsistent with and repugnant to the scope and intent of the result, viewed as a whole, and in connection with the fact showing the defendants' real character and mode of doing business."

In other words, the court held that the defendants were common carriers, and that this clause of their receipt did not modify their liability at all. If the court was correct in this, it is indisputable that this clause did not exempt the carrier from responsibility for the loss claimed.

In respect to the other exception, "perils of navigation and transportation," the court say: "The exception does not excuse the carrier for negligently running into perils of the kind mentioned. The proper constructions of such words is analogous to that which is put upon the words 'perils of the sea' in bills of lading. While thus it would seem very proper to hold that a snag in one of our western rivers is a ·peril of navigation, as appears to have been done in Tennessee, if a vessel is wrecked upon one through the negligence of the carrier or of those whom he employs　\*　\*　\* the carrier is not absolved. Under such circumstances the loss is properly attributed to the agency of man, not to a peril of navigation."

Here again, we have the same fallacies and misleading proposition which have been exposed in a former part of this opinion. The sinking of a boat by running on a snag in one of our western rivers is undoubtedly a "peril of navigation." It is none the less a peril of navigation though it occur by the fault of the person navigating the boat. It is wholly misleading to say that it is a peril of navigation when it results from accident and without fault, and that it is not a peril of navigation when it results from negligence. When goods are lost by reason of such peril, occasioned by the negligence of the carrier, the carrier is responsible, not because the goods were not lost by an accepted peril, but because he has brought about the peril through his own carelessness or negligence. He is made responsible for his negligence, not because he is a common carrier, but because he is guilty of negligence, and has occasioned loss thereby.

In the books which treat of common carriers, only those carriers are treated of who use their own conveyances; hence, it is we often find it stated that the exception, "perils of the sea," or "perils of the river," included in the carrier's bill of lading, does not include the losses arising from what would be generally understood to be "perils of the sea" when occasioned by the negligence of the servants of the carrier. In such case, the carrier being the owner of the vessel in which the goods are carried, and being responsible for its careful navigation, it is not material in effect whether it is held that a loss arising from an excepted peril, brought about by his

negligence, is not a peril of navigation within the meaning of the bill of lading, or that the carrier is responsible for a loss occasioned by the negligence of his servants, but it is better and more correct to place the liability in such a case on the latter ground, because to place it on the former is misleading.

Certainly, as the court say: "The exception does not excuse the carrier for negligently running into perils,　\*　\*　\* nor shall he be heard to set up his own negligence to excuse him from responsibility." But, in the case before the court, no negligence was imputed to the carrier. He did not attempt to set up his own negligence to excuse himself from responsibility. He set up that by the contract he was not to be liable for losses arising from the perils of navigation, and he showed that the loss did arise from a peril of navigation without any fault on his part. He was not responsible for the negligence of the managers of the boat, as I have before shown, because he had no control or authority over them, and as he could be held responsible in the case only for negligence, it would seem he was not liable at all. I think that the court was misled by the definition of "perils of navigation" which it found in the books.

Clearly, that is none the less a "peril of navigation" or a "peril of the sea," because it is attributable to the agency of man. The very case which is generally used to define and explain what is a "peril of the sea," is that of a collision brought about by negligence. If a carrier's vessel should collide on the sea with another vessel, through the fault wholly of the latter, it is everywhere admitted that he would not be responsible for a loss arising from such a collision of goods which he was carrying under a bill of lading that exempted him from responsibility for loss arising from "perils of navigation" or "perils of the sea," and yet undoubtedly, the collision in such case is attributable to the agency—nay, to the negligence—of man.

I have a profound respect for the opinion of the learned courts which I have here noticed, but I think they are opposed to the general current of authorities; that they are founded on fallacious and misleading propositions, and that they disregard the well-settled principles of law.

The motion for a new trial is overruled.

[NOTE. This decision was reversed by the supreme court in Planters' Nat. Bank v. Adams Exp. Co., 93 U. S. 174. Mr. Justice Strong, in delivering the opinion, said:

["The railroad company, in transporting the messenger of the defendants and the express matter in his charge, was the agent of somebody,—either of the express company or of the shippers or consignees of the property. That it was the agent of the defendants is quite clear. \* \* \* It is true the defendants had \* \* \* no control over the company or its servants, but they were its employers. Presumably they paid for its service, and that service was directly and immediately for them. Control of the conduct of an agency is not in all cases essential to liability for the consequences of that

conduct. * * * It is quite as important to the consignor and to the public that the subordinate agency, though not a servant under immediate control, should be held to the strictest care, as it is that the carrier himself and the servants under his orders should be. For these reasons, we think it is not admissible to construe the exception in the defendants' bills of lading as excusing them from liability for the loss of the packages by fire, if caused by the negligence of the railroad company, to which they confided a part of the duty they had assumed. * * * The defendants had an arrangement with the railroad company under which the packages of money, inclosed in an iron safe, were put into an apartment of a car set apart for the use of the express company. Yet the safe containing the packages continued in the custody of the messenger. Therefore, as between the defendants and the railroad company, it may be doubted whether the relation was that of a common carrier to his consignor, because the company had not the packages in charge. Had the packages been delivered to the charge of the railroad company, without any stipulation for exemption from the ordinary liability of carriers, it would have been an insurer both to the express company and to the plaintiffs. But, as they were not so delivered, the right of the plaintiffs to the extremest constant vigilance during all stages of the carriage is lost, if the defendants are not answerable for the negligence of the railroad company, notwithstanding the exception in their bills of lading. We cannot close our eyes to the well-known course of business in the country. Over very many of our railroads the contracts for transportation of goods are made, not with the owners of the roads, nor with the railroad companies themselves, but with transportation agencies or companies, which have arrangement with the railroad companies for the carriage. In this manner some of the responsibilities of common carriage are often sought to be evaded, but in vain. Public policy demands that the right of the owners to absolute security against the negligence of the carrier, and of all persons engaged in performing the carrier's duty, shall not be taken away by any reservation in the carrier's receipt, or by any arrangement between him and the performing company.

["Again, it is urged that, though the defendants remained common carriers, notwithstanding their contract, their responsibility was limited by their receipt to that of an ordinary bailee for hire; and, as such a bailee is not held liable for the neglect of persons over whom he has no control, it is argued that these defendants are not liable for the negligence of the railroad company. This also assumes what cannot be admitted. Although we are told all the authorities agree that, when a common carrier has by special contract limited his liability, he becomes, with reference to that particular transaction, an ordinary bailee, a private carrier for hire, or reduces his responsibilities to those of an ordinary bailee for hire, yet we do not find that the authorities assert that doctrine, if by the phrase 'that particular transaction' is meant the undertaking to carry. Certainly, those to which we have been referred do not. We do not deny that a contract may be made which will put a common carrier on the same level with a private carrier for hire, as respects his liability for loss caused by the acts or omissions of others. The consignor may, by contract, restrain him; may direct how and by what agencies he shall carry. Under such an arrangement, he may become a mere forwarder, and cease to be a carrier. But what we have to do with in these cases is whether the contract proved has that operation. We have already said we think it has not. The exception in the bills of lading has sufficient to operate upon, without being a cover for negligence on the part of any persons engaged in the service undertaken by the carriers. It exempts the defend-

2FED.CAS.—42

ants from responsibility for loss by fire, caused by the acts or omissions of all persons who are not agents or agencies for the transportation. That is a large restriction, and beyond that, in our judgment, the exception in the present case does not extend."]